IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

REFRESCO BEVERAGES US INC.,        *

    Plaintiff,               *

vs.                          *

CALIFORMULATIONS, LLC, SYMRISE  *
INC., THE GREEN ORGANIC           CASE NO. 4:20-CV-181 (CDL)
DUTCHMAN HOLDINGS LTD., 6003   *
HOLDINGS LLC, EDMUND O'KEEFFE,
TYRONE POLHAMUS, KHANH LY,    *
JASON PONTES, DANA KLAYBOR,
WANDA JACKSON, and KALEENA GEE, *

    Defendants.            *

_____

O R D E R

Lawyers sometimes make matters unnecessarily complicated. The Complaint in this action exceeds 600 paragraphs and 90 pages. The briefing on the pending motions to dismiss, which required the analysis of no evidence and should have been restricted to the four corners of the complaint, consumed over 200 pages. Yet the theory of the case that will necessarily be whittled down to its essentials if and when it is presented to a lay jury is relatively simple. Plaintiff ("Refresco") maintains that its former employees, while employed by Refresco's predecessor-in-interest, plotted with one of Refresco's competitors to join this competitor after the termination of their employment with Refresco's predecessor-in-interest and in violation of their employment

agreements with the intention of using the predecessor-in-interest's proprietary information for the benefit of that competitor and future employer.[1]  According to Refresco's Complaint, this conduct gives rise to various claims against the competitor, its affiliated investors, and the former employees. These claims include misappropriation of trade secrets under federal and state law, breach of contract, tortious interference with contract and business relations, breach of fiduciary duty, conversion, and theft of property.

Unable to resist what this Court has on occasion described as the *Twombly/Iqbal* compulsion, Defendants filed an expansive motion to dismiss every claim instead of targeting those that are truly vulnerable to summary dismissal.[2]  For the reasons explained in the remainder of this order, Defendants' motions to dismiss (ECF Nos. 46, 48, & 49) are denied as to Refresco's claims for trademark misappropriation, usurpation of corporate opportunity, breach of the duty of loyalty, aiding and abetting, tortious interference with contract, tortious interference with business relationships, breach of contract as to all employees except Pontes and Ly, and granted as to Refresco's claims for breach of contract against

---

[1] The preceding sentence shares some of the characteristics of the Complaint and briefing in this action. It is long and complicated. Whether it is unnecessarily so is subject to reasonable disagreement. As to the complaint and briefing, such a conclusion is doubtful.

[2] For a discussion of the *Twombly/Iqbal* compulsion, see *Barker v. Columbus Regional Healthcare System, Inc.,* 977 F. Supp. 2d 1341, 1345-46 (M.D. Ga. 2013).

Pontes and Ly, violations of the Georgia RICO Act, civil conspiracy, violations of the Computer Fraud and Abuse Act, and computer theft and trespass under O.C.G.A. § 16-9-93 *et seq*.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## FACTUAL ALLEGATIONS

In deciding the pending motions to dismiss, the Court accepts as true the following facts alleged by Refresco in its complaint.

I.    **The Players**

The Plaintiff in this action, Refresco Beverages US Inc. ("Refresco"), is the successor-in-interest to Cott Beverages LLC ("Cott Beverages"), which it acquired from Cott Holdings Inc. on February 8, 2019. Compl. ¶ 27, ECF No. 1.  No one seriously disputes that Refresco has standing to assert claims that belonged to Cott Beverages prior to this acquisition.  Like Cott Beverage's previous operations, Refresco formulates, produces, manufactures, packages, and distributes beverages and concentrates in the United States. *Id.* ¶ 48.  Also like Cott Beverages, Refresco offers various "beverage-related services," which include "developing new tastes and flavors, formulation, product development and manufacturing for delivery to retail locations." *Id.* ¶ 49.  Before acquiring Cott Beverages, Refresco purchased the shares of another Cott subsidiary, Cott Beverages Inc. ("Cott BI"), from Cott Corporation on January 30, 2018.[3]  *Id.* ¶ 26.  Between January 30, 2018 and February 8, 2019, when Refresco acquired Cott Beverages, Cott Beverages acted as an independent entity.  *Id.*

One of Refresco's competitors and a defendant in this action, Symrise Inc., specializes in "developing and selling flavors and scents, including flavors and scents for beverages." *Id.* ¶ 1.  In

---

[3] Cott's corporate structure is unclear from the parties' briefing. After clarification during the Court's hearing on the pending motions, the parties clarified that Cott BI and Cott Beverages were two wholly-owned subsidiaries of Cott Corporation, which changed its name to Cott Holdings prior to Refresco's acquisition of Cott Beverages.

November 2017, Symrise launched what it described as a "beverage incubator," which it called Califormulations. *Id.* ¶¶ 1-2. Califormulations was trumpeted as "an entirely new concept offering a dedicated suite of product development services to beverage entrepreneurs." *Id.* ¶ 1.   A business entity, Califormulations, LLC, was formed in March 2019 by Symrise, The Green Organic Beverage Corp. ("TGOBC"), and 6003 Holdings LLC to implement this beverage incubator vision. *Id.* ¶ 53. Symrise owned 34% of Califormulations, LLC, which became a competitor of Refresco.

Another defendant in this action, The Green Organic Dutchman Holdings Ltd. ("TGOD"), was instrumental in the formation of Califormulations.   TGOD is a Canadian producer of organic cannabis products.[4] *Id.* ¶ 263.  Its subsidiary, TGOBC, eventually became a 15% owner of Califormulations, LLC, and TGOD had a representative on the Califormulations, LLC board. *Id.* ¶ 21.  Before Califormulations was formed, TGOD began communicating in 2018 with Edmund O'Keeffe and Tyrone Polhamus, who were high level Cott Beverages executives at the time and are defendants in this action, about investing in a venture described at that time as NewCo/Califormulations. *Id.* ¶¶ 10-13.  O'Keeffe was the President

---

[4]  TGOD filed a separate motion to dismiss for lack of personal jurisdiction.  The Court deferred ruling on this motion and ordered jurisdictional discovery. *See* Order (June 25, 2021), ECF No. 80.  Thus, the issues raised in TGOD's motion (ECF No. 54) will not be addressed in today's ruling.

of Cott Beverages in 2018 but was terminated when Refresco purchased Cott Beverages in 2019. *Id.* ¶¶ 393, 396. Polhamus was the Vice President of Technical Services & Operations for Cott Beverages but was terminated when Refresco purchased Cott Beverages. *Id.* ¶¶ 399, 402. After their employment with Cott Beverages ended, O'Keeffe became Chairman of the Board of Califormulations, LLC and Polhamus became its President. *Id.* ¶¶ 398, 403. Before departing Cott Beverages, Polhamus had access to a safe deposit box holding Cott Beverages's trade secrets. *Id.* ¶ 400.

Five other former Cott Beverages employees who went to work for Califormulations are also named as defendants in this action. Three of them, Jason Pontes, Khanh Ly, and Wanda Jackson, joined O'Keefe and Polhamus to form 6003 Holdings, which eventually obtained a 51% ownership stake in Califormulations, LLC. *Id.* ¶¶ 46-47. These former Cott Beverages employees had valuable information and experience from their tenure at Cott Beverages. Khanh Ly was a top research and development scientist for Cott. *Id.* ¶ 404. In this role, Ly "gained a deep knowledge of the company's manufacturing infrastructure," "developed significant relationships with the company's customers and suppliers," and "had access to and used confidential information and trade secrets" such as beverage formulae and laboratory processes and procedures. *Id.* ¶ 405. After Refresco acquired Cott Beverages in 2019, Ly

resigned from Refresco and began working for Califormulations. *Id.* ¶¶ 406-07.

Jason Pontes was a plant manager for Cott Beverages.  In this role, Pontes was "responsible for plant management, concentrate supply, and procurement activities of ingredients for the facilities." *Id.* ¶ 409.  Pontes "developed significant relationships with the company's suppliers" and "had access to and used confidential information and trade secrets." *Id.* Pontes resigned from Refresco in April 2019 and later joined Califormulations. *Id.* ¶¶ 410-11.

Wanda Jackson was a material planner for Cott Beverages. *Id.* ¶ 416.  She was responsible for "working with the company's suppliers to have sufficient inventory of raw materials at the Columbus facility to meet production requirements" and had access to and used confidential information. *Id.* ¶ 417. Jackson resigned from Refresco in April 2019 and joined Califormulations, LLC. *Id.* ¶ 418.

The two other former Cott Beverages employees named as defendants, Dana Klaybor and Kaleena Gee, had valuable experience from their employment at Cott Beverages, but they had no ownership interest in Califormulations, LLC.  Klaybor started at Cott Beverages as a senior laboratory technician and worked her way up to Director of Lab Services. *Id.* ¶ 412. Klaybor was "responsible for carrying out ingredient evaluations driven by supply issues

and/or cost reduction, providing plant quality support and product development support, and formula management." *Id.* ¶ 413.  Klaybor also developed significant expertise in areas important to Cott and Refresco's operations, including optimizing beverage formulas in a plant setting, and had access to and used confidential information about Cott and Refresco trade secrets.  *Id.* ¶ 414. Klaybor resigned from Refresco in April 2019.  *Id.* ¶ 415.

Gee began working for Cott Beverages as a flavor development expert and was later promoted to beverage scientist.  *Id.* ¶ 419. Gee oversaw flavor selection, evaluation, and beverage application development.  She also had access to confidential information and trade secrets and "often used laboratory equipment and conducted testing on ingredients, concentrates, syrups, and beverages."  *Id.* ¶ 420.  Gee resigned from Refresco in April 2019 and joined Califormulations.  *Id.* ¶¶ 422-23.

O'Keeffe, Polhamus, and each of the other individual defendants signed a "Confidentiality Undertaking and Restrictive Covenants" agreement with Cott Beverages.  *Id.* ¶¶ 369-75.

## II.  The Game

The Califormulations beverage incubator concept needed partners.  Cott Beverages was a natural prospect.  But instead of looking for a strategic partner, Refresco claims the Califormulations allies had something more devious in mind.

A.   The Non-Disclosure Agreement between Cott and Symrise

Paul Graham and Michael Falkenberg, the President and Senior Category Director of Symrise, began scouting for business opportunities after Symrise launched the Califormulations beverage incubator in November 2017. *Id.* ¶¶ 58-59. Graham contacted O'Keeffe in 2017, before Refresco's acquisition of Cott BI, to discuss possible collaborations between Cott Beverages and Symrise. *Id.* ¶ 61. After Refresco acquired Cott BI in 2018, Graham and Falkenberg continued discussing a possible collaboration with Cott Beverages, which remained independent and was not sold to Refresco at that time. *Id.* ¶ 68. During this time, O'Keeffe reported his contacts with Symrise executives to his superiors at Cott Beverages. *Id.* By August 2018, O'Keeffe and Polhamus knew that Refresco intended to purchase Cott Beverages and that they likely would not be retained in their positions following the acquisition. *Id.* ¶ 79.

Symrise and Cott Beverages eventually executed a non-disclosure agreement in September 2018 to "protect information disclosed by Cott Beverages and/or Symrise . . . in connection with the consideration of a possible business relationship where Cott Beverages LLC may provide services to [Symrise]." *Id.* ¶ 89. The NDA stipulated that confidential information "will be used by the Receiving Party solely for the purposes of evaluating whether the Services will be provided, and if so, performing the Services . . . and not for any other purpose." *Id.* ¶ 91. A "Receiving

Party" could not disclose confidential information to third parties. *Id.* ¶ 92. The NDA did not reference a "Project Road Runner" or any work Cott Beverages would do for Symrise on behalf of Symrise's clients. *Id.* ¶¶ 94-95.

### B.   NewCo and "Project Road Runner"

Soon thereafter, in October 2018, Falkenberg contacted O'Keeffe and Polhamus to request help with a project for one of Symrise's customers. *Id.* ¶ 102. Polhamus forwarded this email to Ly and Pontes. *Id.* ¶ 103. On November 12, 2018, O'Keeffe and Polhamus participated in a conference call with Falkenberg and Graham to discuss Califormulations and the possibility of creating a new beverage company, which they initially called "NewCo."[5] *Id.* ¶¶ 104, 107. They also discussed Project Road Runner, which was a code name for a beverage that one of Symrise's customers ("Client A") wished to develop and for which Graham and Falkenberg wanted O'Keeffe and Polhamus's help. *Id.* ¶ 108. O'Keeffe did not report this conference call to his Cott superiors. *Id.* ¶ 110. O'Keeffe later prepared a "Concept to Shelf" memo with a "short overview on the concept and strategic positioning of Newco," which he described as being founded by "beverage industry insiders with deep sector experience." *Id.* ¶¶ 111-12. O'Keeffe sent this memo to Falkenberg and Graham in November 2018 from his personal email. *Id.* ¶ 114.

---

[5] NewCo would eventually become Califormulations. Compl. ¶ 341.

O'Keeffe and Polhamus agreed to help Symrise on Project Road Runner by developing a beverage formulation for the project to benefit Client A, Symrise's customer. *Id.* ¶¶ 122-23. Falkenberg sent O'Keeffe and Polhamus documents from Client A, including a development timeline, in connection with this project. *Id.* ¶ 120. O'Keeffe and Polhamus recruited Ly for this project and used employees, time, lab equipment, and materials of Cott Beverages to develop the Project Road Runner beverage formulation. *Id.* ¶¶ 124-25. Ly directly oversaw work done on Project Road Runner and recruited Gee and a temporary employee, Michelle McGuire, to work with him. *Id.* ¶¶ 126-27.

Ly deliberately concealed the work on Project Road Runner from Jennifer Joiner, who assigned staffing on Cott's research projects, because he did not want Cott to learn about the work he was doing. *Id.* ¶ 128. McGuire eventually began to fall behind on her work for Cott. *Id.* ¶ 129. When Joiner inquired, McGuire said she was working on a new beverage formulation and that "Ly had told her . . . not to tell Joiner about Project Road Runner." *Id.* On January 30, 2019, Ly sent an email to Symrise which stated: "Please find attached the formulations for the items that shipped today for evaluation along with the supplier information. For bulk materials we have multiple suppliers qualified, whereas the unique ingredients are still work in process for qualifications of suppliers and product evaluations." *Id.* ¶ 136. Symrise, in turn,

11

provided these formulations to Client A.  *Id.* ¶ 139.  Ly, O'Keeffe, and Polhamus knew this formula was developed "for the benefit of Symrise and NewCo, not Cott Beverages."  *Id.* ¶ 135.  Symrise never paid Cott for this work.  *Id.* ¶ 133.

C.   Project Shawshank and the "Secret Oils"

Meanwhile, O'Keeffe and Polhamus planned their exit from Cott to NewCo/Califormulations with Symrise executives.  Graham solicited an outside consultant to develop a comprehensive proposal for NewCo, the "Newco Slide Deck," which was shared with other Symrise executives and eventually forwarded to O'Keeffe and Polhamus in December 2018.  *Id.* ¶¶ 145-50.  O'Keeffe began scouting possible locations for a NewCo site in Columbus, Georgia, and planned an in-person meeting with Polhamus, Graham, and Falkenberg for January 3-4, 2019.  *Id.* ¶¶ 163, 165.  In an agenda for this meeting, Polhamus referenced a "Project Shawshank."[6]  *Id.* ¶ 167. "Shawshank" and "NewCo" were used interchangeably to refer to the plan to create a new beverage company.  *Id.* ¶ 169.

During this time, Polhamus accessed some of Cott's most valuable trade secrets.  Cott Beverages kept its ingredient lists, formulas, and costing information for its most popular and successful beverages within a safe deposit box in a bank in Columbus, Georgia.  *Id.* ¶¶ 224, 230.  These formulations, known as

---

[6] Refresco believes that Project Shawshank was named after "The Shawshank Redemption," a film about a man's plot to break out of prison.

the "Secret Oils Formulations," are the "single-most valuable category of beverage-related trade secrets possessed by Cott Beverages, and later Refresco Beverages US." *Id.* ¶ 226. There was no ongoing business need to access the physical copy of the Secret Oils Formulations in the safe deposit box because relevant portions of the formulations, which could not be used to replicate the formulations but could be used to produce them in the ordinary course of business, were available on a Cott Beverages server. *Id.* ¶ 233. Despite this, Polhamus accessed the safe deposit box on November 29, 2018, only two weeks after Polhamus and O'Keeffe "shared their Concept to Shelf memo with Symrise." *Id.* ¶¶ 236-37. Polhamus accessed the safe deposit box again on December 17, 2018. Id. ¶ 238. Polhamus accessed the safe deposit box for a final time on December 19, 2018, only two days before Polhamus emailed Symrise executives the agenda for Project Shawshank. *Id.* ¶ 242. Polhamus did not tell his Cott superiors that he would be accessing the safe deposit box on any of these occasions. *Id.* ¶¶ 240, 243.

The Symrise and Cott Beverages employees involved with NewCo continued to solicit clients for NewCo. Client A selected NewCo to develop a new beverage for it, and another Symrise client expressed interest in retaining NewCo's services. *Id.* ¶¶ 172, 182. In January 2019, Graham and Polhamus discussed a potential hot chocolate beverage formulation, which was not reported to Cott

Beverages superiors. *Id.* ¶¶ 197-98. O'Keeffe and Polhamus added pages to the NewCo Slide Deck indicating that various key employees from Cott Beverages, such as Pontes, Ly, and Polhamus, would have prominent positions in NewCo. *Id.* ¶ 189. At all times during these discussions, Symrise executives knew that O'Keeffe, Polhamus, Pontes, and Ly were still employed by Cott Beverages and even identified possible legal action by Refresco due to Symrise's pursuit of these employees as a concern in the NewCo Slide Deck. *Id.* ¶¶ 208, 212-15.

### D. Forming Califormulations, LLC

Symrise, O'Keeffe, and Polhamus determined that NewCo needed another investor and shared the NewCo proposal with TGOD in 2018. *Id.* ¶¶ 262-63. O'Keeffe and Polhamus sent Michael Gibbons, a TGOD executive, the Concept to Shelf memo previously provided to Symrise. *Id.* ¶¶ 264, 268. In November 2018, TGOD knew that O'Keeffe and Polhamus were employees of Cott Beverages, that Refresco intended to purchase Cott Beverages, and that Refresco would likely not retain O'Keeffe and Polhamus following this acquisition*. Id.*

TGOD expressed interest in the NewCo proposal and continued to communicate with O'Keeffe and Polhamus about possible benefits TGOD could enjoy from investing in NewCo. They discussed a potential lab for Prem Virmani, a research scientist, in Columbus, Georgia. *Id.* ¶¶ 278, 280. O'Keeffe and Polhamus sent TGOD

executives copies of presentations they worked on for Symrise, and TGOD created an internal presentation of the "NewCo Opportunity" which indicated that TGOD would have a 20% ownership in NewCo. *Id.* ¶¶ 322, 326.  After Refresco purchased Cott Beverages, Matt Schmidt, TGOD's Vice President of Business Development, asked O'Keefe if his "key guys" were "good to go" and indicated that TGOD's involvement "needs to be contingent on the top R&D guy joining," which Refresco believes to mean Ly.  *Id.* ¶¶ 286, 336, 339-40.

In February 2019, Symrise and TGOD, along with Cott employees O'Keeffe, Polhamus, Ly, Pontes, Gee, and Jackson formed Califormulations, LLC under Delaware law.  *Id.* ¶ 341.  The Cott employees held their interest in Califormulations via 6003 Holdings, a company formed by LLCs that the Cott employees owned. TGOD's 15% interest was held by its subsidiary, TGOBC.  Refresco contends that this subsidiary was formed solely to hold TGOD's interest in Califormulations.  *Id.* ¶ 21.  Refresco further argues that Symrise, TGOD, and 6003 Holdings formed Califormulations and recruited former Cott employees O'Keeffe, Polhamus, Ly, Pontes, Gee, Jackson, and Klaybor despite knowing that the employees had signed employment agreements containing restrictive covenants. *Id.* ¶¶ 384-92.  Finally, Refresco alleges that, in early 2019, Polhamus and Pontes each sent themselves emails from their Cott

15

emails to their personal emails containing confidential information. *Id.* ¶¶ 447-48.

DISCUSSION

Refresco brings claims for misappropriation of trade secrets under federal and Georgia law, as well as a variety of state law claims arising from Defendants' alleged breach of duty and breach of contract.[7]  Defendants move to dismiss Refresco's complaint in its entirety.  The Court discusses each of these claims in turn.

## I.   Misappropriation of Trade Secrets

Refresco contends that Symrise, Califormulations, O'Keeffe, Polhamus, Ly, and Gee violated the Defense of Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* (the "Federal Act"), and the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 *et seq.* (the "Georgia Act"), because Defendants misappropriated (or encouraged the misappropriation of) Refresco's proprietary trade secrets. Specifically, Refresco alleges that Defendants misappropriated the Road Runner beverage formulation, that Polhamus took the Secret Oils Formulations from the safe deposit box and made them available to the other Defendants, and that Pontes and Polhamus sent themselves confidential information in last-minute emails to their personal email accounts.  Defendants respond that Refresco cannot

---

[7] Refresco also brought claims under the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), but it conceded at the hearing that these claims must be dismissed in light of the Supreme Court's recent decision in *Van Buren v. United States,* 141 S. Ct. 1648 (2021).

recover under either Act because Refresco has not identified protectable trade secrets, has not adequately alleged that Defendants misappropriated trade secrets, and is barred from recovery under the doctrine of in pari delicto.

### A.   The Protected Trade Secrets

Under the Federal Act, a trade secret is information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information" and that "the owner . . . has taken reasonable measures to keep . . . secret." 18 U.S.C. § 1839(3). The Georgia Act defines a trade secret in an essentially identical manner. *See* O.C.G.A. § 10-1-761(4) (defining trade secret).

Here, Refresco alleges that the Road Runner formulation was created with equipment, materials, and employees of Cott Beverages during Cott work hours and at Cott facilities. Compl. ¶¶ 124-39. Refresco thus sufficiently alleges that the Road Runner formulation was Cott property. Refresco plausibly alleges that this information derives value from not being generally known because beverage formulations allow companies to create unique products not offered by competitors. Refresco also alleges that it took reasonable measures to keep the Road Runner formulation secret. Although Refresco was unaware of the Road Runner

formulation's existence, it is reasonable to infer that its predecessor-in-interest, Cott Beverages, would have taken measures to keep it secret but for its misappropriation by certain employees. Refresco's detailed protective measures for trade secrets, which it described extensively in its Complaint, would undoubtedly have applied to the unique Road Runner formulation.

The Court finds Defendants' contention that the formula did not contain unique ingredients unpersuasive. Refresco plausibly alleges that the formula was unique enough to be a protectable trade secret, which is enough for present purposes. The Court rejects Defendants' reliance upon one email arguably taken out of context, particularly when all reasonable inferences are construed in Refresco's favor. Refresco has alleged a protectable trade secret.

### B.   Misappropriation

In addition to alleging a protectable trade secret, Refresco must allege facts demonstrating that the trade secret was misappropriated. Misappropriation may be shown by demonstrating that Defendants acquired the trade secret and knew or had reason to know it was acquired by improper means. O.C.G.A. § 10-1-761(2)(A); 18 U.S.C. § 1839(5)(A). Alternatively, Refresco may show that Defendants disclosed or used the trade secret without express or implied consent, knowing or having reason to know "at the time of disclosure or use the trade secret was acquired under

the circumstances giving rise to a duty to maintain its secrecy or limit its use." *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1292 (11th Cir. 2003).

Refresco has clearly carried its pleading burden. Defendants' attempt to seek safe harbor behind the NDA is unavailing. The NDA was intended to "protect information disclosed . . . in connection with the consideration of a possible business relationship where Cott Beverages LLC may provide services to [Symrise]." Compl. ¶ 89. It specifically forbade disclosing any confidential information to third parties. Refresco alleges that several Cott employees conspired with Symrise for their own personal gain and that Symrise disclosed the Road Runner formulation to Client A, who was not party to the NDA. Refresco thus sufficiently alleges that Defendants' acquisition and disclosure of the Road Runner formulation fell outside of the scope of the NDA.

Defendants also misunderstand *Twombly*/*Iqbal* when it argues that Refresco has not plausibly alleged that Symrise acquired the Secret Oils Formulations because Refresco qualifies its allegations with the phrase "on information and belief." First, the Court cannot conceive of how an honest plaintiff could allege such facts under these circumstances without candidly acknowledging that they are alleged based on the plaintiff's "information and belief." Refresco specifically alleges that

Polhamus accessed the safe deposit box containing the Secret Oils Formulations three times while engaging in business discussions with Symrise about forming a competitor business to Cott Beverages. Refresco further alleges that Polhamus never accessed the safe deposit box prior to this time and did not report this access to his direct superiors.   Finally, Refresco alleges that Polhamus had no legitimate reason to access the box because parts of the Secret Oils Formulations necessary for production were available in a secure location on a Cott Beverages server, thus making access to the entire formula in the safe deposit box unnecessary. Refresco clearly alleges that Polhamus accessed the Secret Oils Formulations and transmitted them to Symrise for no legitimate business purpose of Cott Beverages.   This is enough.

C.   In Pari Delicto

Although it unclear whether Defendants acknowledge that "in pari delicto" is an affirmative defense, they apparently argue that Refresco must allege facts negating the elements of such a defense.   "Generally, the existence of an affirmative defense will not support a motion to dismiss," but "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint."   *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).   A party asserting an in pari delicto defense "must show that 'the plaintiff bears at

least substantially equal responsibility for the violations [it] seeks to redress." *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) (quoting *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1308 (11th Cir. 2013)).  Defendants assert that in pari delicto applies because top Cott Beverages management sanctioned the exchange of information between Cott Beverages and Symrise pursuant to the parties' NDA.  But, as previously explained, the NDA did not authorize the conduct alleged in Refresco's complaint.  Thus, Defendants' motion to dismiss based on in pari delicto must be denied.

## II.  Breach of Contract – Symrise

Refresco claims that Symrise breached the NDA.  The parties agree that Delaware law applies to this claim.  Under Delaware law, the essential elements of a breach of contract claim are: "(a) the existence of a contract; b) the breach of an obligation imposed by that contract; and c) resulting damages to the plaintiff." *Lorenzetti v. Hodges*, 62 A.3d 1224 (Del. 2013). Refresco has clearly alleged that an enforceable contract exists. Furthermore, the NDA expressly forbids the disclosure of confidential information to third parties.  Compl. ¶ 92.  And Refresco alleges that Symrise not only disclosed confidential information to a third party but sold the information to the third party.  While the NDA expressly contemplated the exchange of confidential information between Symrise and Cott Beverages to

determine whether the parties would form a business relationship, it certainly did not authorize the release of that information to a third party as alleged by Refresco.  Refresco has plausibly alleged that Symrise breached the NDA.

Refresco also alleges that this unauthorized disclosure of its Road Runner formulation resulted in the loss of a unique proprietary beverage formula that it could have used or otherwise sold itself.  And Refresco claims it suffered damages as a result. Symrise's motion to dismiss Refresco's breach of contract claim is denied.

## III. Breach of Contract – The Individual Employees

Refresco alleges that each individually named Defendant breached provisions of their contracts with Cott/Refresco. Specifically, Refresco alleges that these employees breached non-compete, nondisclosure, customer non-solicitation, corporate opportunities, and confidentiality contractual provisions. Defendants contend that each of these provisions are overbroad and unenforceable under applicable state law.

The employment contracts provide that Florida law shall apply.  But Defendants argue that a Georgia court will not apply the law of another state if the application of that state's law offends Georgia public policy.  And they maintain that Georgia law should apply because Florida law on restrictive covenants is inconsistent with Georgia law.  Georgia courts have observed that

"[c]hoice-of-law and forum selection clauses may be invalid if enforcement would contravene Georgia public policy." *Fortress Inv. Grp., LLC v. Holsinger*, 841 S.E.2d 55, 62 (Ga. Ct. App. 2020). "[I]f a party can show both that a restrictive covenant violates Georgia public policy and that a court in the selected forum likely would find the restrictive covenant enforceable, a compelling reason exists to avoid the contractual forum selection clause." *Id.* (quoting *Carson v. Obor Holding Co.*, 734 S.E.2d 477, 481 (Ga. Ct. App. 2012)).

Based on the foregoing, the Court must first determine whether the applicable restrictive covenants would be unenforceable under Georgia law. This analysis is complicated by the fact that Georgia law changed in 2011. Prior to that change, restrictive covenants in employment contracts were disfavored and strictly construed. They also could not be saved by modification by the Court. The law changed in 2011 to authorize the enforcement of previously overbroad restrictions and to authorize courts to modify restrictive covenants if necessary.

A.   Pontes and Ly's Contracts

Pontes and Ly's contracts were signed in 2004 and 2003, respectively. Therefore, they are governed by the pre-2011 Georgia law. *Holsinger*, 841 S.E.2d at 61. Prior to 2011, non-solicitation clauses prohibiting individuals from accepting unsolicited work from clients violated Georgia public policy because they

23

"'unreasonably impact[ed]' the restricted party's ability to make a living and the public's ability to choose the business or professional it prefers to contract with." *Carson*, 734 S.E.2d at 483 (quoting *Dougherty, McKinnon & Luby, P.C., v. Greenwald, Denzik & Davis, P.C.*, 447 S.E.3d 94, 96 (Ga. Ct. App. 1994)); *see also Cox v. Altus Healthcare & Hospice, Inc.*, 706 S.E.2d 660, 664 ("The nonrecruitment provision is likewise invalid on its face because it bars [the plaintiff] from even unsolicited contact with . . . employees or affiliates.").

Here, Pontes and Ly's contracts state that they cannot "solicit or offer employment to any person employed or engaged by the Corporation or any Affiliate at the time the Employee ceased to be employed by the Corporation or who was an employee during the 12-month period immediately preceding such time." Compl. Attach. 7, Ly Confidentiality Undertaking & Restrictive Covenant ¶ 5(a), ECF No. 1-7 ("Ly Covenant"); Compl. Attach. 8, Pontes Confidentiality Undertaking & Restrictive Covenant ¶ 5(a), ECF No. 1-8 ("Pontes Covenant"). Thus, on its face, this language bars Pontes and Ly from offering employment to current or former Cott Beverages employees, whether that contact was solicited or not. Because restrictions barring unsolicited contact are prohibited under pre-2011 Georgia law, Pontes and Ly's non-solicitation agreements are void.

Defendants argue that the confidentiality provisions of Pontes and Ly's contracts are also unenforceable because they impose a perpetual restriction. Refresco responds that the confidentiality provisions are only unenforceable if they impose both a perpetual restriction and fail to define confidential information. *See Carson*, 734 S.E.2d at 482 ("The fact that this clause purports to bind [plaintiff] 'in perpetuity,' together with its failure to define 'confidential information,' renders it overly broad and therefore unenforceable under Georgia law."). Refresco argues that this provision only restricts a certain category of defined confidential information and is thus enforceable under Georgia law. But Refresco misinterprets the provision. It is not restricted to confidential information; it also applies to "any other information which [they] may acquire during [their] employment with respect to the business and affairs of the Corporation." Ly Covenant ¶ 1; Pontes Covenant ¶ 1. Thus, the confidentiality provision is overbroad and unenforceable under pre-2011 Georgia law.

Because the non-solicitation and confidentiality provisions of the employment contracts are unenforceable, Pontes and Ly argue that the "corporate opportunities" provision also cannot be enforced. That provision states that the employees agree not to divert from Cott Beverages corporate opportunities they learned about during their employment. Defendants are correct that prior

to 2011, "Georgia [did] not follow the 'blue pencil' doctrine of severability in construing employment contracts." *Dent Wizard Int'l Corp. v. Brown*, 612 S.E.2d 873, 877 (Ga. Ct. App. 2005). Thus, if "one restrictive covenant . . . [was] unenforceable, they [were] all unenforceable." *Id.* But "the rule that unenforceable non[-]compete covenants will not be severed . . . does not apply equally to all types of covenants restricting competition." *Lapolla Indus., Inc. v. Hess*, 750 S.E.2d 467, 474 (Ga. Ct. App. 2013). Rather, the rule appears focused on non-compete and customer non-solicitation covenants. *CMGRP, Inc. v. Gallant*, 806 S.E.2d 16, 24 (Ga. Ct. App. 2017). A restriction that prevents a former employee from stealing opportunities belonging to his former employer of which the employee became aware because of that employment is a different type of restriction.

Refresco only brings breach of contract claims based on the confidentiality and employee non-solicitation provisions in Pontes and Ly's contracts. As discussed, the invalidation of these provisions does not automatically invalidate other restrictive covenants. And, even if the non-competition provisions in Pontes and Ly's contracts were invalid, the corporate opportunities provisions would avoid invalidation because the provisions are not general noncompete provisions but rather seek to protect a narrow range of opportunities the employees learned about while employed at Cott/Refresco. *Cf. Durham v. Stand-by Labor of Ga., Inc.*, 198

S.E.2d 145, 149 (Ga. 1973) (reasoning that, although "[c]ovenants not to disclose and utilize confidential business information" were similar to general noncompete provisions, they differed because covenants not to disclose "bear no relation to territorial limitations and their reasonableness turns on factors of time and the nature of the business interest sought to be protected").  As such, the Court declines to find the corporate opportunities provision void simply because the confidentiality and employee non-solicitation clauses in Pontes and Ly's contracts are void.[8]

In summary, Refresco's breach of contract claims against Pontes and Ly based upon the non-solicitation and confidentiality provisions are dismissed.  Refresco's breach of contract claim arising from the corporate opportunities provision survives.

B.  **Breach of Contract Claims Against Polhamus, Klaybor, and Gee**

Polhamus, Klaybor, and Gee entered their contracts after the 2011 change in Georgia law.  Any restrictive covenants following that change must be: (1) reasonable in time, geographic area, and scope of prohibited activities, (2) applied to certain categories of employees, and (3) justified by a legitimate business interest. *Kennedy v. Shave Barber Co.*, 822 S.E.2d 606, 611-13 (Ga. Ct. App.

---

[8] Defendants also appear to contend that the corporate opportunities provisions are "vague" and not necessary to protect a legitimate business interest.  The Court finds these arguments unpersuasive. The Court interprets these provisions to encompass only those business opportunities an employee discovered while employed at Cott/Refresco, which makes them sufficiently narrow to be enforceable.

2018).   The geographic territory encompassed by a noncompete covenant is presumptively reasonable if it "includes the areas in which the employer does business at any time during the parties' relationship" and "[t]he total distance encompassed by the provisions of the covenant also is reasonable" or "[t]he agreement contains a list of particular competitors as prohibited employers for a limited period of time after the term of employment or a business or commercial relationship."  O.C.G.A. § 13-8-56(2).

The post-2011 law also provides that "[a]ny reference to a prohibition against 'soliciting or attempting to solicit business from customers' or similar language shall be adequate for such purpose and narrowly construed to apply only to: (1) such of the employer's customers, including actively sought prospective customers, with whom the employee had material contact; and (2) products or services that are competitive with those provided by the employer's business."  O.C.G.A. § 13-8-53(b).

Finally, the post-2011 law allows courts to blue-pencil overbroad restrictive covenants.  Generally, "a court may modify a covenant that is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive with regard to the employee than as originally drafted by the parties." O.C.G.A. § 13-8-53(d).

With these principles in mind, the Court addresses the remaining Defendants' arguments that Refresco's breach of contract

claims fail because the provisions upon which the claims are based are overbroad.

### 1. Geographic Restriction

The geographic restriction in Polhamus, Klaybor, and Gee's contracts is overbroad.  It prevents competition in "Canada, the United States, Mexico and the United Kingdom."  *See, e.g.*, Klaybor Confidentiality Undertaking and Restrictive Covenant 5(b)(i), ECF No. 1-9.  But Refresco alleges that it "engages in formulating, producing, manufacturing, packaging, and distributing beverages and concentrates in the United States" and that it has "bottling facilities throughout the United States."  Compl. ¶ 48.  It does not allege that it does business outside the United States.  Thus, the geographic limitation is unenforceable under Georgia law.  But it can be easily modified to comply with Georgia law.  By striking the provision restricting competition in Canada, Mexico, and the United Kingdom, the covenants not to compete in the applicable contracts are enforceable under both Georgia and Florida law.[9]

---

[9] Like Georgia law, Florida law requires non-competition provisions to be reasonable in geographic scope.  *See Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1238 (11th Cir. 2009).  Florida law mandates the modification of unreasonable restrictive covenants and thus would find the non-competition provision, as modified, enforceable.  *See* Fla. Stat. § 542.335(c) ("If a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests.").

Defendants' motions to dismiss Refresco's breach of contract claims based on the overbroad geographic limitation are denied.

>    *2.   Customer Non-Solicitation*

Refresco contends that Polhamus breached a non-solicitation provision prohibiting him from soliciting customers. Polhamus argues that this provision is overbroad. To the extent that this solicitation provision appears ambiguously overbroad, it can be interpreted in a narrower manner that would make it enforceable under Georgia and Florida law. *See* O.C.G.A. § 13-8-53(b) (directing that non-solicitation covenants should be narrowly construed to apply where (1) the employee attempted to solicit business from existing customers and "actively sought prospective customers" with whom the employee had "material contact" and (2) the employee is soliciting business for "products or services that are competitive with those provided by the employer's business"). Construed in this manner, the covenant is enforceable.[10]

To the extent that the non-solicitation provision is overbroad because it prevents Polhamus from accepting unsolicited business from customers, the Court can blue-pencil the provision

---

[10] The applicable provision of Polhamus's contract states that he may not "for the purpose of competing with any business of the Corporation, solicit, interfere with, accept any business from or render any services to anyone who is a client or a prospective client of the Corporation or any Affiliate at the time the Employee ceased to be employed by the Corporation or who was a client during the 12 months immediately preceding such time." Compl. Attach. 6, Polhamus Confidentiality Undertaking & Restrictive Covenants § 5(a)(ii), ECF No. 1-6 ("Polhamus Contract").

to conform with Georgia law by striking the provision preventing the employee from "accept[ing] any business from or render[ing] any services to" the designated individuals.  And, to the extent that the provision is overbroad because it applies to customers in Europe, the Court can strike that term as well.[11]  Refresco alleges sufficient facts to support a claim that the modified contracts have been breached based upon customer solicitation.  Thus, Refresco's breach of contract claim against Polhamus for violating this provision shall not be dismissed.

---

[11] A Florida court would likewise uphold the customer non-solicitation provision.  While restrictive covenants must be reasonable in geographic scope, Florida courts have declined to find restrictions invalid simply because they fail to contain geographic limitations. *Env't Servs., Inc. v. Carter*, 9. So. 3d 1258, 1264 (Fla. Dist. Ct. App. 2009) (collecting cases).  Defendants also contend that Florida law only allows covenants to restrict solicitation of specific prospective customers or existing customers.  *Ansaarie v. First Coast Cardiovascular Inst.*, 252 So. 3d 287, 290-91 (Fla. Dist. Ct. App. 2018).  The Court is not certain that *Ansaarie* stands for the proposition Defendants claim it does.  While *Ansaarie* notes that "in order for a relationship with a prospective [client] to qualify as a legitimate business interest, a party had to prove the relationship in question was with a particular, identifiable individual," *Ansaarie* did not state that a restrictive covenant was void or unenforceable simply because it did not contain such language.  Rather, *Ansaarie* found that a party seeking to enforce such a covenant had to prove the relationship in question was with a specific customer.  Defendants face the same problem with their contention that Florida law requires restrictive covenants to preclude only relationships with former customers with whom there was a tangible agreement for future work.   Florida courts may require a party seeking to enforce a restrictive covenant to make such a showing, but Defendants cite no case standing for the proposition that Florida courts will strike a restrictive covenant as overbroad if it does not contain language with such limitations.

### 3.   *Employee Non-Solicitation*

Refresco also claims that Polhamus and Gee breached their contracts by soliciting Refresco employees.  Defendants respond that the employee non-solicitation provisions in the applicable contracts are overbroad because they prevent hiring unsolicited employees.  The provision states that an employee cannot "solicit or offer employment to any person employed or engaged by the Corporation or any Affiliate at the time the Employee ceased to be employed by the Corporation[.]" *See, e.g.*, Polhamus Contract § 5(a)(iii).  To the extent that this provision is impermissibly overbroad, it can easily be blue-penciled to conform to Georgia law.  If the Court strikes "or offer" from this provision, it will not bar unsolicited contact from employees.  And Refresco has adequately alleged that Defendants actively solicited Refresco's employees.  Thus, Defendants' motion to dismiss Refresco's breach of contract claims based on Defendants' solicitation of employees is denied.

### 4.   *The Confidentiality Provisions*

Polhamus, Klaybor, and Gee also seek to dismiss the breach of contract claims based on the confidentiality provisions in the applicable contracts.  They argue that those provisions are overbroad under post-2011 Georgia law because they prevent disclosure of "any other information which [the employee] may acquire during his employment." *See, e.g.*, Polhamus Contract § 1.

Refresco, however, correctly notes that the full provision in the contracts applies only to "information . . . with respect to the business and affairs of the Corporation." *Id.* Given this context, the contracts clearly do not seek to prevent the disclosure of any information, but only confidential information related to business affairs. To the extent that provision seeks to prevent disclosure of non-confidential information, the Court can modify the contractual provision by simply striking the phrase "any other information which [the employee] may acquire during his employment." Because Refresco sufficiently alleges that Defendants disclosed confidential information related to Refresco's business affairs, it has alleged a breach of the modified contract. Defendants' motions to dismiss those claims are denied.

     *5.   The Corporate Opportunities Provisions*

Although Polhamus, Klaybor, and Gee seek to dismiss the breach of contract claims based on Defendants' usurpation of corporate opportunities, they offer no legitimate reason why these provisions are unenforceable. They simply suggest in conclusory fashion that the "covenants . . . are impossibly vague" and are not "necessary to protect a legitimate business interest." Such an argument is another way of saying "they are not enforceable because they are unenforceable." Defendants' motion to dismiss Refresco's breach of contract claims based on the corporate opportunities provisions is denied.

C.   Defendants' Miscellaneous Arguments

Consistent with their "throw in the kitchen sink" approach to their motion to dismiss, Defendants spill additional wasted ink on various unpersuasive arguments.  Although summary rejection of these arguments would be justifiable, the Court takes the time to acknowledge them with a brief discussion.  Defendants argue that Refresco's breach of contract claims must fail because the contracts were originally signed with Cott Beverages, not Refresco.  Defendants also argue that Polhamus's contract was extinguished by a subsequent Memorandum of Understanding and Separation Agreement.[12]

Georgia law authorizes Refresco to enforce the contracts originally signed with Cott under these circumstances.  *See* O.C.G.A. § 13-8-58.  And, although Florida law allows assignment of restrictive covenants "only if 'the restrictive covenant expressly authorized enforcement by a party's assignee," Florida precedent indicates that restrictive covenants may nonetheless be enforceable if acquired in connection with a "100 percent stock purchase" or a corporate merger.  *See Corp. Exp. Office Prods., Inc. v. Phillips*, 847 So. 2d 406, 414 (Fla. 2003).  In *Phillips*, the Florida Supreme Court concluded that restrictive covenants

---

[12] Although the parties argue about the validity of Jackson's contract in their briefing, Refresco confirmed in the Court's hearing on the pending motions that it does not actually bring any breach of contract claims against Jackson.

were enforceable after the company with which they were originally signed was bought in a stock sale and then merged with another company. Here, Refresco bought all the stock in Cott Beverages before Cott Beverages was eventually merged into Refresco. Compl. ¶¶ 26-30. Therefore, the covenants are enforceable.

Defendants confusingly argue that Refresco's complaint fails to state a claim because Polhamus's contract was extinguished by a Memorandum of Understanding signed in 2017 and a Separation Agreement signed in 2019. It appears that Defendants are attempting to have this claim dismissed as a matter of law pursuant to Rule 12(b)(6) based upon the affirmative defense of release. Again, "the existence of an affirmative defense will not support a motion to dismiss," but "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller*, 727 F.2d at 1069. Refresco's Complaint does not indicate that Polhamus's obligations were released as a matter of law. Moreover, evaluating this affirmative defense would require the Court to look at matters outside of the pleadings. This is yet another example of defense counsel confusing *Twombly/Iqbal* with a Rule 56 motion for summary judgment, which obviously is premature at this stage of the proceedings. Defendants' motion to dismiss on these grounds is denied.

**IV.  Tort-Based Claims**

Refresco asserts the following tort claims under Delaware law:  (1) usurpation of corporate opportunity against O'Keeffe, and (2) aiding and abetting usurpation of corporate opportunity against Symrise, TGOD, and Polhamus.[13]  Refresco also asserts the following claims under Georgia law: (1) conspiracy, (2) RICO, (3) conversion, (4) usurpation of corporate opportunity, (5) breach of the duty of loyalty, (6) aiding and abetting the breach of the duty of loyalty, (7) tortious interference with business and/or contracts, and (8) violations of O.C.G.A. § 16-9-93 for computer theft and trespass.  The Court first addresses the Delaware law claims and then addresses the Georgia law claims.

    A.   Delaware Law Claims

Refresco contends that O'Keeffe is liable for usurpation of corporate opportunities because he usurped "(1) the opportunity to engage in a beverage-related venture with Symrise; (2) the opportunity to engage in a beverage-related venture with TGOD; (3) the opportunity to form a beverage incubator business (NewCo); (4) the opportunity to help Client A develop a new beverage; (5) the opportunity to develop a new coffee beverage; (6) the opportunity to develop syrup for a large customer; and (7) production of a hot chocolate beverage."  Compl. ¶ 475.  Under Delaware law, "a

---

[13] As previously stated, the Court deferred ruling on TGOD's motion to dismiss.

corporate officer or director may not take a business opportunity
for his own if: (1) the corporation is financially able to exploit
the opportunity; (2) the opportunity is within the corporation's
line of business; (3) the corporation has an interest or expectancy
in the opportunity; and (4) by taking the opportunity for his own,
the corporate fiduciary will thereby be placed in a position
inimicable to his duties to the corporation." *Broz v. Cellular
Info. Sys., Inc.*, 673 A.2d 148, 155 (Del. 1996).[14]   "For [a]
corporation to have an actual or expectant interest in any specific
property, there must be some tie between that property and the
nature of the corporate business." *Johnston v. Greene*, 121 A.2d
919, 924 (Del. Ch. 1956).

Defendants contend that Refresco had no reasonable expectancy
in the alleged opportunities.  Specifically, Defendants argue that
Refresco, as a self-described competitor of Symrise, cannot
reasonably claim that O'Keeffe usurped its opportunity to work on
Project Road Runner with Symrise.  Refresco's claims, however,
arise out of Defendants' alleged usurpation of an opportunity from
Cott Beverages, which Refresco purchased and whose legal rights

---

[14] All parties appear to agree that Delaware law governs the usurpation of
corporate opportunity claims against O'Keeffe in this action.  *See* O.C.G.A.
§ 14-2-1505(c) (stating that the Georgia Code "does not authorize this state to
regulate the organization of internal affairs of a foreign corporation");
*Diedrich v. Miller & Meier & Assocs., Architects & Planners, Inc.*, 334 S.E.2d
308, 310 (Ga. 1985) ("We hold that the wrongful appropriation of a business
opportunity of a foreign corporation by its officer or director is an internal
affair not to be regulated by Georgia law.  Instead, the local law of the state
of incorporation applies[.]").

Refresco acquired.  Defendants fail to explain how Cott Beverages did not have a reasonable expectancy in the alleged opportunities. Further, the Court fails to see how Refresco's status as Symrise's competitor precludes it from having an expectancy in the alleged opportunities, as the beverage projects were clearly within the scope of business for both Refresco and Cott Beverages. Defendants' motion to dismiss this claim is denied.[15]

B.  Georgia Law Claims

Defendants contend that Refresco's Georgia law claims are either preempted or are subject to dismissal for failure to state a claim.  As discussed in the remainder of this Order, Refresco's RICO, civil conspiracy, and computer theft and trespass claims are preempted by the Georgia Act.[16]  Defendants' motions to dismiss are denied as to Refresco's remaining Georgia law claims.

1.  Claims Preempted by the Georgia Act

The   Georgia   Act   "supersede[s]   conflicting   tort, restitutionary,  and  other  laws  of  [Georgia]  providing  civil remedies for misappropriation of a trade secret."  O.C.G.A. § 10-

---

[15] Defendants move to dismiss Refresco's aiding and abetting claims based on O'Keeffe's usurpation of corporate opportunities solely because they contend that Refresco does not state an underlying claim against O'Keeffe.  *See In re Rural Metro Corp.*, 88 A.3d 54, 97 (Del. Ch. 2014) (explaining that, to state a claim for aiding and abetting, a plaintiff must state an "underlying breach of duty" and "knowing participation in the breach").  Because the Court finds that Refresco states a claim against O'Keeffe, Defendants' motion to dismiss Refresco's aiding and abetting claims is denied.

[16] Refresco voluntarily dismissed its conversion claims in response to Defendants' motions to dismiss.

1-767(a).   The Georgia courts have explained that the Georgia Act "preempts claims [that] rely on the same allegations as those underlying the plaintiff's claim for misappropriation of a trade secret*." Robbins v. Supermarket Equip. Sales, LLC*, 722 S.E.2d 55, 58 (Ga. 2012) (quoting *ProNvest, Inc. v. Levy*, 705 S.E.2d 204, 206 (Ga. Ct. App. 2010)).   A claim is not preempted, however, if it "seeks to remedy an injury caused not by the misappropriation of proprietary information, but by separate conduct - such as the misappropriation of physical property or the improper interference with contractual relationships respecting something other than proprietary information*." Pro. Energy Mgmt., Inc. v. Necaise*, 684 S.E.2d 374, 377 (Ga. Ct. App. 2009) (quoting *Diamond Power Int'l v. Davidson*, 540 F. Supp. 2d 1322, 1345 (N.D. Ga. 2007)).

Refresco's claims for civil conspiracy under Georgia law, violations of the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"), O.C.G.A. § 16-14-4 *et seq.*, and violations of O.C.G.A. § 16-9-93 for computer theft and trespass are superseded by the Georgia Act.   Refresco bases its claims for computer theft and trespass on Defendants' use of the Cott Beverages computer networks to "obtain Cott Beverages' proprietary and trade secret information" and transmit that information to Symrise.   Compl. ¶¶ 683-687.   Refresco's claim under O.C.G.A. § 16-9-93 is thus superseded by the Georgia Act because it relies on the same set of facts used to support Refresco's misappropriation

claims.   Likewise, Refresco's Georgia RICO and civil conspiracy claims are superseded by the Georgia Act.   Refresco's complaint explicitly notes that both claims are predicated on the theft and misappropriation of trade secrets.   Both counts contend that Defendants are liable because they conspired to misappropriate trade secrets from Cott Beverages/Refresco.[17]

Refresco argues that these claims should survive dismissal because they rely on "facts and conduct beyond that supporting its [Georgia Act] claim[s]," such as the "concerted and conspiratorial actions of the [individual] Defendants who may not, themselves, have misappropriated Refresco's trade secrets."   Pl.'s Resp. to Def.'s Mot. to Dismiss 35, ECF No. 68.   As an example, Refresco points to its assertion that Klaybor used Refresco's network to send Gee confidential documents belonging to Refresco.   Refresco notes that it does not rely on this allegation to support its misappropriation claims.

The Court is unpersuaded by Refresco's argument.   The Georgia Act was intended to be the "exclusive" remedy for state law trade secret misappropriation claims, and Refresco cannot evade the Georgia Act's pleading standards by asserting misappropriation allegations elsewhere.   *See Robbins*, 722 S.E.2d at 58 ("For the

---

[17] Although the RICO cause of action is brought against Pontes and the trade secrets misappropriation claims are not, Refresco's RICO allegations against Pontes implicate the misappropriation of trade secrets and are thus preempted.

[Georgia Act] to maintain its exclusiveness, a plaintiff cannot be allowed to plead a lesser and alternate theory of restitution simply because the information does not qualify as a trade secret under the act."). Even if Refresco's misappropriation claims do not explicitly reference Klaybor's emails, these allegations clearly implicate Klaybor's transmission of confidential, proprietary Refresco trade secret information.[18]  Because the Georgia Act provides the only remedy for these allegations, Refresco's state law RICO and civil conspiracy claims must be dismissed.

> 2. *Breach of the Duty of Loyalty – All Individual Defendants*

Refresco contends that the individual Defendants breached their duty of loyalty to Cott Beverages and Refresco by misusing Cott resources to create a beverage formulation and evaluate business opportunities for a competitor.  Defendants argue that any such claims must be dismissed because the individual Defendants did not owe a duty of loyalty to Cott Beverages or Refresco.  It is not entirely clear from the briefing and the Court's subsequent hearing on the motions whether the parties maintain that these breach of loyalty claims are in the nature of breach of fiduciary duty claims such that Delaware law would apply.  The parties'

---

[18] In the Court's hearing on the pending motions, Refresco confirmed that it does not assert claims based on Defendants' alleged theft of proprietary information that does not qualify as a trade secret.

briefing relies upon Georgia law.   Therefore, the Court assumes
that even if Delaware law applied to such claims, the parties agree
that it is not materially different from Georgia law on these
issues.   Although an employee can plan to compete with his employer
while the employer-employee relationships exists, he "is not . . .
entitled to solicit customers for [a] rival business before the
end of his employment nor can he properly do other similar acts in
direct competition with the employer's business."   *E.D. Lacey
Mills, Inc. v. Keith*, 359 S.E.2d 148, 155 (Ga. Ct. App. 1987)
(alteration in original) (quoting Restatement 2nd of Agency § 393
(1958)).

More specifically, Defendants argue that Refresco's breach of
duty claims must fail as to Jackson, Gee, and Klaybor because these
Defendants did not owe Cott Beverages or Refresco a duty of
loyalty.   Under Georgia law, "a cause of action against an [at-
will] employee for breach of the duty of loyalty must be based
upon a fiduciary duty owed by the employee and must rise and fall
with any claim for breach of fiduciary duty."   *Physician
Specialists in Anesthesia v. Wildmon*, 521 S.E.2d 358, 362 (Ga. Ct.
App. 1999).   "While an employer/employee relationship does not
always create a fiduciary relationship, an employee who may bind
his or her employer has a fiduciary duty to it."   *Necaise*, 684
S.E.2d at 378.

Although Refresco does not allege specifically that these employees had the authority to bind Cott Beverages, Refresco does allege that these employees held significantly important positions within Cott Beverages that could create a fiduciary duty to Cott Beverages. Klaybor, for example, was a Director of Lab Services, Jackson was a Material Planner, and Gee was a Flavor Development Expert and Beverage Scientist who was responsible for significant laboratory operations. Compl. ¶¶ 412, 416, 419-20. These allegations, along with Refresco's allegations that these employees held positions of trust and violated their duties of loyalty, are sufficient for Refresco's claims to survive dismissal.

   *3.   Aiding and Abetting Breaches of the Duty of Loyalty*

Refresco alleges that Symrise, Califormulations, 6003 Holdings, O'Keeffe, Polhamus, and Ly aided and abetted the individual Defendants in their breaches of the duty of loyalty. Under Georgia law, a plaintiff alleging a claim for aiding and abetting a breach of fiduciary duty must show that "(1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the

primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *White v. Shamrock Bldg. Sys., Inc.*, 669 S.E.2d 168 (Ga. Ct. App. 2008) (quoting *Insight Tech. Inc. v. Freighcheck, LLC*, 633 S.E.2d 373, 379 (Ga. Ct. App. 2006)).

Refresco sufficiently alleged that Symrise, Califormulations, 6003 Holdings, O'Keeffe, Polhamus, and Ly knowingly participated and encouraged the individual Defendants' breaches. For example, Refresco alleges that Symrise and Polhamus were aware that Cott Beverages had an interest in working with Symrise but still assisted O'Keeffe in taking the opportunity to work with Symrise for himself. Refresco also alleges that, other than 6003 Holdings and Califormulations, all Defendants knew the individual employees owed a duty of loyalty to Cott Beverages/Refresco and that they would violate that duty by acting in the manner they did, yet still encouraged the Defendants' actions. These allegations, along with others in the Complaint, are adequate to state plausible claims for aiding and abetting the violation of the duty of loyalty.

6003 Holdings and Califormulations argue that they cannot be held liable for most of the alleged conduct because they were formed in February and March of 2019, after much of the alleged conduct occurred. Refresco, however, alleges otherwise. And the Court must accept those allegations as true at this stage of the proceedings. Of course, the LLC Defendants cannot be held liable

for actions taking place before they were formed and any claims based on aiding and abetting breaches of the duty of loyalty that occurred prior to their formation will fail.  But the Court does not interpret Refresco's complaint to be restricted to pre-formation conduct, and thus the motion to dismiss these claims is denied.

4.   *Tortious Interference with Contractual Relations*

To state a claim for tortious interference with contractual relations, Refresco must allege facts plausibly establishing: "(1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Duke Galish, LLC v. Manton*, 662 S.E.2d 880, 885 (Ga. Ct. App. 2008) (quoting *Dalton Diversified v. AmSouth Bank*, 605 S.E.2d 892, 897-98 (Ga. Ct. App. 2004)).  Defendants argue that Refresco failed to allege sufficient facts to support a finding of "malice."  "'Malice [in this context]. . . is a term to be given liberal meaning; malicious or maliciously means any unauthorized interference, or any interference without legal justification or excuse." *Culpepper v. Thompson*, 562 S.E.2d 837, 840 (Ga. Ct. App. 2002) (quoting *Renden,*

*Inc. v. Liberty Real Estate Ltd. P'ship III*, 444 S.E.2d 814, 817 (Ga. Ct. App. 1994)).

Refresco alleges among other things that Defendants knew that the individual employees had employment or separation agreements with Cott Beverages/Refresco and that the Defendants knew that the individual employees' departure from Refresco under the circumstances would be a breach of their agreements with Refresco. Compl. ¶ 637 ("Prior to the formation of Califormulations, LLC, Symrise expressly identified 'Refresco legally pursue ex-Cott employees post sale' as a risk associated with the establishment of 'NewCo.'"). Despite this knowledge, Defendants allegedly induced the individual employees to leave Refresco to work for Califormulations in violation of their employment or separation agreements. Refresco sufficiently pleaded malice for its tortious interference with contractual relations claim.

    *5.  Tortious Interference with Business Relations*

Refresco alleges that Symrise and Califormulations are liable for tortious interference with business relations because these Defendants induced Client A to develop a business relationship with Califormulations rather than with Cott/Refresco.  Under Georgia law, the elements for tortious interference with business relations are identical to the elements for tortious interference with contractual relations.  *See Manton*, 662 S.E.2d at 885 (reciting the elements for tortious interference with business

relations).  Defendants contend that this claim fails because Cott Beverages/Refresco had no actual or anticipated relationship with Client A.

Construing all reasonable inferences in Refresco's favor, the Court interprets Refresco's complaint to allege that Client A would have established a business relationship with Cott Beverages/Refresco had Symrise and Califormulations not interfered.  If Refresco is unable to develop evidence to support this allegation during discovery, then Defendants will be entitled to summary judgment.  But at this stage, the Court denies the motion to dismiss it.

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 46, 48, & 49) are granted in part and denied in part. Refresco's conversion, Georgia RICO, Georgia computer theft and trespass, Federal Computer Fraud and Abuse Act, and civil conspiracy claims are dismissed.  Refresco's breach of contract claims against Pontes and Ly based on the employee non-solicitation and confidentiality provisions of their contracts are dismissed. All other claims remain pending to the extent described in this Order.

IT IS SO ORDERED, this 22nd day of September, 2021.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE