```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF GEORGIA
                   COLUMBUS DIVISION

REFRESCO BEVERAGES US INC.,      *

     Plaintiff,                  *

vs.                              *    CASE NO. 4:20-CV-181 (CDL)

CALIFORMULATIONS, LLC, et al.,   *

     Defendants.                 *
```

O R D E R

Plaintiff Refresco Beverages US Inc. alleges that The Green Organic Dutchman Holdings Ltd. ("TGOD") encouraged several individual Defendants to breach their fiduciary duties to Refresco's predecessor-in-interest, Cott Beverages, and tortiously interfered with several Defendants' contracts with Cott Beverages. TGOD filed a motion to dismiss Refresco's complaint, arguing that this Court does not have personal jurisdiction over TGOD and that Refresco fails to state a claim for relief. For the following reasons, that motion (ECF No. 116) is denied.

DISCUSSION

To determine whether the Court can exercise personal jurisdiction over TGOD, the Court must decide (1) whether the Court can exercise personal jurisdiction under the forum state's (Georgia) long arm statute, and (2) whether exercising personal jurisdiction over TGOD would violate the Due Process Clause of the

Fourteenth Amendment.  *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).

I. **Personal Jurisdiction under Georgia's Long Arm Statute**

Georgia's long arm statute provides for personal jurisdiction over a nonresident if the nonresident, "in person or through an agent . . . (1) Transacts any business within this state; [or] (3) Commits a tortious injury in [Georgia] caused by an act or omission outside of [Georgia] if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Georgia]."  O.C.G.A. § 9-10-91.  A nonresident defendant "transacts any business" in Georgia when it "has purposefully done some act or consummated some transaction in" Georgia, although the defendant "need not physically enter the state."  *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1264 (11th Cir. 2010) (quoting *Robertson v. CRI, Inc.*, 601 S.E.2d 163, 166 (Ga. Ct. App. 2004)).  A court should "examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted any business within Georgia."  *Id.*

The following factual allegations, supplemented by evidence discovered during jurisdictional discovery, are relevant to

whether TGOD transacted business in Georgia for purposes of the Georgia long arm statute.[1]

TGOD is a Canadian corporation with its principal place of business in Ontario. Compl. ¶ 8, ECF No. 1. TGOD produces organic cannabis products. In 2018, Symrise Inc. and two executives of Cott Beverages (Edmund O'Keeffe and Tyrone Polhamus) decided to share their proposal to form a new Georgia-based beverage incubator, "NewCo/Califormulations," with TGOD because they believed there was a "lucrative market for cannabis-infused beverages." *Id.* ¶ 263. O'Keeffe approached TGOD's Senior Vice President of Sales, Michael Gibbons, and told him that Refresco was going to buy Cott Beverages. At the time, that information was not publicly known. *Id.* ¶ 266. Csaba Reider, TGOD's president, informed O'Keeffe and Polhamus that TGOD was interested in the proposal and that Matt Schmidt would "take the lead" for TGOD regarding TGOD's potential participation. *Id.* ¶ 286.

TGOD representatives sent multiple emails and made multiple phone calls to individuals in Georgia in connection with their interest in the NewCo proposal. These contacts include, among other correspondence, (1) a January 2019 email to O'Keeffe in which Schmidt indicated TGOD was interested in investing subject to due

---

[1] Refresco's complaint describes an alleged conspiracy among various Defendants to steal its trade secrets and employees. Those facts are recounted in greater detail in a previous Order. *See* Order (Sep. 22, 2021), ECF No. 94.

3

diligence and further review, and (2) February 2019 emails to O'Keeffe in which Schmidt asked whether O'Keeffe's "key guys" were "good to go" and informed O'Keeffe that the NewCo "deal needs to be contingent on the top R&D guy joining." Compl. ¶¶ 336, 339. TGOD President Csaba Reider also discussed including a lab for TGOD scientist, Prem Virmani, in NewCo's proposed Columbus, Georgia location. *Id.* ¶ 280. No such lab was ever constructed for Virmani, though, and Virmani never worked for NewCo in any capacity. TGOD did, however, acknowledge that its investment would mean that important Cott personnel, including several named Defendants, would join Califormulations. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss Ex. 14, Summary of Proposed Terms and Conditions for Investment in Califormulations, LLC 0009, ECF No. 122-13 ("Toby Polhamus, Khanh Ly and Jason Pontes will be appointed as the officers of the Company[.]").

The Green Organic Beverage Corp., which is TGOD's subsidiary, is a 15% owner of Califormulations. Compl. ¶ 21. TGOD set up this subsidiary "for the purpose of holding TGOD's ownership stake in Califormulations."[2] *Id.* Further, TGOD's Chief Financial Officer, Sean Bovingdon, is a member of Califormulations' Board of Managers. *Id.* In this role, Bovingdon participates in "oversight

---

[2] TGOD initially argued that the subsidiary's actions could not be attributed to it. After completing jurisdictional discovery, however, TGOD abandoned this argument. Am. Renewal of Def.'s Mot. to Dismiss, ECF No. 116.

4

of the management of Californulations by its executive officers," but has "no role in directing the day-to-day operations of Californulations and [has] no authority to enter into contracts or otherwise bind Californulations." Bovingdon Aff. ¶ 10, ECF No. 54-2. Californulations' website advertises TGOD's involvement with the company, stating that Californulations "combines the expertise of the Columbus Group, Symrise, . . . [and] the offering of [TGOD]." Compl. ¶ 21. TGOD likewise issued a press release advertising its role as an "investor and strategic partner" in Californulations, which was to operate out of Columbus, Georgia. Pl.'s Resp. to Def.'s Mot. to Dismiss Ex. 5, Press Release, TGOD, The Green Organic Dutchman Enters US Market Through Cornerstone Investment in Californulations LLC, ECF No. 122-4 at 4 ("TGOD Press Release").

TGOD argues that it did not "transact business" in Georgia because its contacts with Georgia were limited to emails and phone calls to people in Georgia and a minority investment in Californulations, a Delaware LLC with its principal place of business in Georgia. In support of this argument, TGOD cites *LABMD, Inc. v. Tiversa, Inc.*, an unpublished opinion by a panel of the Eleventh Circuit in which the panel found that the defendants' actions—calling the plaintiff who was in Georgia, sending the plaintiff nine e-mails offering intelligence and security services, and accessing the plaintiff's document on a peer-to-peer

network using computers outside of Georgia—were insufficient to subject the defendant to personal jurisdiction under the first and third prongs of Georgia's long arm statute given that the defendant was "not registered to do business in Georgia, [had] no employees or customers in Georgia, deriv[ed] no revenue from business activities in Georgia, own[ed] no Georgia property, and pa[id] no Georgia taxes." 509 F. App'x 842, 845 (11th Cir. 2013) (per curiam). In addition, the panel noted that, generally, "when a defendant uses the telephone or email to contact a Georgia resident[,] [the] defendant's conduct occurs at the place where [the] defendant speaks into the telephone or types and sends his email." *Id.*

Notwithstanding this unpublished panel opinion, it is clear that telephone calls and emails that originate outside the state but are directed into the state are relevant to the long arm statute inquiry. As explained in a published Eleventh Circuit opinion, because "a defendant need not physically enter the state" to transact business in Georgia, "a nonresident's mail, telephone calls, and other 'intangible' acts, though occurring while the defendant is physically outside of Georgia, must be considered." *Diamond Crystal Brands*, 593 F.3d at 1264.

Moreover, TGOD did not simply send emails to Georgia contacts advertising its services, as was the case in *LABMD*. Instead, TGOD's emails and phone calls reflect active negotiation of a

6

strategic partnership with Califormulations, which culminated in TGOD's purchase of a 15% interest in Califormulations and placement of Sean Bovingdon, TGOD's Chief Financial Officer, on Califormulations' Board of Managers.

TGOD also argues that its interest in Califormulations and Bovingdon's position on Califormulations' Board of Managers do not constitute "transacting business" in Georgia under the long arm statute. TGOD contends that merely holding an interest in a company is insufficient to subject it to jurisdiction in Georgia, as doing so here would mean that any minority shareholder could be subject to suit in Georgia simply for owning stock in a Georgia corporation. TGOD, however, is not simply a passive silent stockholder. TGOD held a 15% interest in Califormulations as a self-described "strategic partner" of an LLC that does not sell its stock on the open market. TGOD Press Release. TGOD also argues that Sean Bovingdon's role in Califormulations is irrelevant because Bovingdon could not bind Califormulations to contracts and did not oversee day to day management of the LLC. Bovingdon, however, admittedly participated in "oversight of the management of Califormulations by its executive officers," Bovingdon Aff. ¶ 10, and a reasonable interpretation of the evidence and circumstances supports the conclusion that Bovingdon sat on the board on behalf of TGOD. The Court finds that TGOD's ownership interest in Califormulations, combined with Bovingdon's

7

role on the board and TGOD's numerous emails and calls to individuals located in Georgia, constitute "transacting business" in Georgia under the long arm statute.

## II. Personal Jurisdiction under the Due Process Clause

Having found personal jurisdiction under the long arm statute, the Court must be satisfied that the exercise of that jurisdiction does not offend due process.  That inquiry requires the Court to determine "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'"  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 474-75 (1985)).

Based on the present record, the Court has little trouble concluding that exercising personal jurisdiction over TGOD here does not offend TGOD's constitutional due process rights.  First, Refresco's claims arise from TGOD's contacts with Georgia. Refresco claims that TGOD aided and abetted several Defendants in their breaches of contract and fiduciary duties.  TGOD's contacts with Georgia include active negotiations suggesting that TGOD's

8

investment was contingent on several Defendants joining Califormulations. Summary of Proposed Terms and Conditions for Investment in Califormulations, LLC 0009, ECF No. 122-13. Second, TGOD purposefully availed itself of jurisdiction in Georgia through its negotiations and eventual investment in a Georgia LLC. Lastly, personal jurisdiction over TGOD would comport with traditional notions of fair play and substantial justice. TGOD argues that it is unfair to subject it to suit in Georgia when it is a foreign corporation located in Canada. The Court finds that argument unpersuasive given that TGOD appears to have actively negotiated partial ownership of an LLC with its principal place of business in Georgia. TGOD's motion to dismiss for lack of personal jurisdiction is denied.

## CONCLUSION

For the foregoing reasons, TGOD's motion to dismiss (ECF No. 116) is denied.[3] The current stay in this action is hereby lifted, and a Rules 16/26 order will be issued.

IT IS SO ORDERED, this 30th day of November, 2021.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[3] TGOD's motion to dismiss for failure to state a claim merely rehashes arguments made by the other Defendants in their respective motions to dismiss, which the Court denied in large part. The Court denies TGOD's motion for the same reasons set forth in the Court's Order denying the other Defendants' motions. *See generally* Order (Sep. 22, 2021), ECF No. 94.